[No. 36425-1-I.   Division One.   April 15, 1996.]

The State of Washington, *Respondent*, v. Michael
Kern, *Appellant*.

*Tom P. Conom*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *David F. Thiele, Deputy*, for respondent.

ELLINGTON, J. — Michael Kern appeals his conviction for first degree theft, arguing that the trial court erred by denying his motion to suppress his bank records. Kern contends suppression is required because of defects in execution of the search warrant used to obtain the records. Specifically, he alleges that the search was not timely completed, that he did not receive notice of the search, and that the searching officer delegated the search to non-officers, modified the terms of the warrant, and failed to file a proper inventory and warrant return form. We hold

that the search warrant for Kern's bank records was executed when served. We further hold that Kern was not entitled to notice of the search, that the delegation was not improper, and that any procedural error was ministerial only and did not prejudice Kern. We therefore affirm.

## I. FACTS

Michael Kern was the district manager of the Seattle office of Thorn Automated Systems (Thorn), a business providing security services for commercial entities. As district manager, Kern had authority to employ subcontractors, and "employed" Applied Security Concepts (ASC) as a subcontractor on several jobs. Unbeknownst to Thorn, Kern was the owner of ASC. In fact, Thorn received neither equipment nor services from ASC.

Thorn received bills from ASC amounting to thousands of dollars, supposedly for equipment installed and services rendered. On behalf of Thorn, Kern approved the bills for payment. Thorn's checks were endorsed by ASC and were deposited in the Marysville Branch of Sea-First Bank. The account had been opened by Kern as a "sole ownership" account, and Kern was the only authorized signatory.

Deputy Sheriff Phil Sisk of the Snohomish County Sheriff's Office (SCSO) commenced an investigation against Kern and obtained a search warrant for the bank's records on the ASC account for the relevant time period. In accordance with CrRLJ 2.3(c), the warrant commanded that the "premises" be searched within 10 days.

Sisk served the search warrant on the bank on the same day it was issued. Sisk included with the warrant an inventory and return form, on which Sisk had typed the following: "Documents to be provided as soon as possible, within thirty (30) days, to SCSO." On the same day, despite the fact that no records had yet been seized, Sisk filed with the court an "Inventory and Return of Search Warrant," describing the items purportedly seized.

Sisk was not present during the search. The bank mailed

the records to Sisk, who received them 17 days after the date of issuance of the warrant. Kern was not given notice of the search until charges were filed some nine months later.

At trial, Kern moved to suppress the bank records on the basis of several alleged procedural defects in the execution of the search warrant. His motion was denied, the bank records were admitted as evidence, and he was convicted. This appeal followed.

## II. DISCUSSION

The State does not dispute Kern's claim to a privacy interest in his bank records under article I, section 7 of the Washington State Constitution. Kern does not challenge issuance of the warrant. The only questions raised on appeal are whether certain alleged procedural defects in execution and return of the warrant render it invalid.

■ Absent constitutional considerations, the rules for execution and return of a warrant are essentially ministerial in nature. *See, e.g., State v. Parker*, 28 Wn. App. 425, 426, 626 P.2d 508 (1981). In general, procedural noncompliance with these rules does not invalidate a warrant or otherwise require suppression of evidence absent a showing of prejudice to the defendant. This principle has been applied by Washington courts in a variety of circumstances where the rules for execution of a warrant have been violated.[1]

1. Timeliness. Sisk served the warrant on the bank on the date of its issuance. Sisk did not receive the bank records until 17 days had passed. Kern therefore contends that the search was not executed within the time constraints stated in CrRLJ 2.3(c), which provides that a

---

[1]*See State v. Parker*, 28 Wn. App. 425, 426, 626 P.2d 508 (1981) (officer served unsigned copy of warrant); *State v. Smith*, 15 Wn. App. 716, 719, 552 P.2d 1059 (1976) (warrant failed to designate magistrate for return); *State v. Bowman*, 8 Wn. App. 148, 150, 504 P.2d 1148 (1972) (officer failed to properly serve defendant with warrant); *State v. Wraspir*, 20 Wn. App. 626, 629, 581 P.2d 182 (1978) (officer failed to take inventory in presence of other person).

search warrant must command an officer to search the designated person, place, or thing within 10 days of issuance of the warrant. Kern contends the rule represents a constitutional mandate and that violation requires reversal.

■ As the State points out, a search is constitutionally timely so long as the search begins before the warrant expires and so long as probable cause continues through completion of the search. "[C]ompleting a search shortly after the expiration of a search warrant does not rise to the level of a constitutional violation and cannot be the basis for suppressing evidence seized so long as probable cause continues to exist, and the government does not act in bad faith." *United States v. Gerber*, 994 F.2d 1556, 1560 (11th Cir. 1993). Here there is no question that Sisk served the warrant in a timely fashion and that probable cause still existed when the records were delivered.

■ The only question raised by Kern which is relevant to a constitutional analysis is whether Sisk's service of the warrant "began" the search. We hold that since the service initiated the bank's records retrieval process, service indeed "began" the search. The details of the bank's retrieval process are not disclosed here, but those details are not relevant to the timeliness analysis because the search here, unlike a physical search of "premises," had as its object the transaction records of a disinterested business entity whose daily operations involve the creation, storage and retrieval of the records themselves. In these circumstances, service of the warrant begins the search. Therefore, the search began before the warrant expired, and so long as probable cause continues to exist through completion of the search, the search is constitutionally timely. *Gerber*, 994 F.2d at 1560.

If the search violated no constitutional precept, the requirements of the rule were ministerial, and suppression will be ordered as a remedy for violation only where prejudice can be shown. *Parker*, 28 Wn. App. at 426-27; *Gerber*, 994 F.2d at 1560. Kern neither demonstrates nor argues prejudice.

Kern argues, however, that suppression is mandatory when a search is not complete within the 10-day rule, citing the Supreme Court's recent decision in *State v. Thomas*, 121 Wn.2d 504, 851 P.2d 673 (1993). In *Thomas*, the court construed a statute controlling execution of a warrant for drugs; the court reconciled the 3-day requirement of the statute with the 10-day requirement of the court rule and found the search to be timely. The court engaged in no discussion of the consequences of a rule violation.

Kern also relies on *State v. Gonzalez*, 71 Wn. App. 715, 862 P.2d 598 (1993), *review denied*, 123 Wn.2d 1022 (1994), in which officers left a wiretap on defendant's line for 10 hours longer than the 24-hour period authorized by statute. The court held that the conversations seized beyond the statutory period were inadmissible. Like *Thomas*, *Gonzalez* is distinguishable for several reasons. First, *Gonzalez* too involved violation of a statute (RCW 9.73.230, dealing specifically with wiretaps). The court's decision relied on Washington case law holding that evidence derived in violation of this statute is inadmissible. Here, Kern cites no similar Washington authority requiring suppression of evidence obtained where a search is not completed within 10 days under the rule. Second, timing issues in the context of wiretapping are inherently different from timing issues in other contexts. The deadline for removal of a wiretap essentially defines the *scope and extent* of the search, so that an extension of the deadline increases the number of conversations seized and the degree of privacy invaded. By contrast, the scope of the search here was for existing records specifically described in the warrant; timing of the search did not alter its scope.

Kern also relies on *Sgro v. United States*, 287 U.S. 206, 53 S. Ct. 138, 77 L. Ed. 260 (1932) wherein the United States Supreme Court found that a warrant not executed within 10 days became invalid after the tenth day under a federal statute specifically providing that an unexecuted warrant becomes void after the tenth day of issuance. However, again, there is no similar Washington statute.

The State relies upon *State v. Callaghan*, 33 Or. App, 49, 576 P.2d 14, *review denied*, 284 Or. 1 (1978) in which the Oregon court construed a statute requiring that execution of a search warrant occur between 7 A.M. and 10 P.M. In refusing to suppress items seized after 10 P.M., the court noted that the warrant was served at 8:30 A.M. and the search continued until midnight. The court held that for purposes of the time limitation, execution and service are synonymous. The *Callaghan* court looked to the purpose of the limitation and noted that the statute sought to avoid the danger involved in searches *initiated* at night ("the invasion of private premises in the small hours of the night smacks of totalitarian methods and is more likely to create the terror that precipitates gun battles."). Noting that the search in question began in the morning, the court concluded that "none of the dangers inherent in nighttime searches obtained," and held that the suppression motion was properly denied. *Callaghan*, 576 P.2d at 18.

A similar analysis here would begin with the purpose of the 10-day rule. No Washington case has been found which discusses the rule in that context. However, other courts reviewing similar rules have held that the time limitation represents a time during which the issuing magistrate is satisfied that probable cause will likely continue to exist. *See, e.g., State v. Miller*, 429 N.W.2d 26, 34 (S.D. 1988). Thus, the analysis under the *Callaghan* approach is essentially the constitutional analysis discussed above. There is no question that probable cause existed when the warrant was served and continued to exist when Kern's bank records were delivered to the Sheriff. The object of the search was not transitory, nor changeable, nor "stale." The dangers inherent in delay were not implicated. We find no violation of CrRLJ 2.3(c).

2. Delegation of Search to Nonofficers. Kern contends that the search warrant was rendered invalid when its execution was delegated to nonofficers. Here, Sisk handed the warrant to bank employees and instructed them to

provide him with the records designated in the warrant. He was not present while they searched for or retrieved the bank records.

■ Kern argues that such a practice is prohibited by CrRLJ 2.3(c), which states in relevant part: "The warrant may be directed to any peace officer. The warrant shall command the officer to search . . . the person, place, or thing named for the property or person specified." This rule does not state any express limitation on an officer's discretion to enlist the assistance of nonofficers in completing the search.[2] Kern, however, places great emphasis on the requirement that a warrant will command *the officer* to search, arguing that this language means the officer must take at least some part in the search. Here, Sisk did participate in the search in that he appeared at the bank, spoke with bank personnel, and required them to provide him with the records specified in the search warrant. In so doing, Sisk specifically informed bank personnel of the exact scope of the search and initiated the bank's procedures. Sisk's continued presence or supervision at the bank was unnecessary to ensure completion of the search in a proper manner. A police officer will not ordinarily perform a search of a bank's records, indeed may not be qualified to do so,[3] and police presence is not necessary for the search to go forward, nor for the items sought to be identified and seized. Nor is special police evidence training necessary for retrieval and preservation of the records seized. Where a warrant is issued for specific bank records, delegation of the search to bank employees is not improper.

Kern asks this court to follow the recent holding of a Florida court on the delegation issue. In *Morris v. State*,

---

[2] Some courts have specifically held that civilians conducting a search at an officer's request become agents of the officer. *See, e.g., People v. Boyd,* 123 Misc.2d 634, 474 N.Y.S.2d 661, 666 (1984), *aff'd,* 135 A.D.2d 1149, 523 N.Y.S.2d 22 (1987); *State v. Klosterman,* 317 N.W.2d 796, 803 n.7 (N.D. 1982).

[3] Deputy Sisk testified he did "not normally know where the records are or how they are filed."

622 So. 2d 67 (Fla. Dist. Ct. App. 1993), *review denied*, 630 So. 2d 1101 (1993), the court held that a search of a doctor's office for records was improper where the officer was present at the doctor's office, but did not personally supervise the search, which was performed in a separate room by six employees of the Auditor General. The court noted that the required level of officer supervision varies with the circumstances and pointed out that the need for adequate officer supervision is based primarily on concerns that the warrant be properly executed and that the scope of the warrant not be exceeded. Under the circumstances of this case, such concerns were not present. Here, the searching civilians were employees of the searched entity, which was a disinterested third party; they were searching for specifically described records according to a routine procedure. Therefore, despite the lack of police supervision, there was very little chance that the scope of the warrant would be exceeded. Indeed, Kern makes no such claim.

We also note that any potential error resulting from delegation of the search would be at most ministerial. Because Kern does not allege prejudice as a result of the delegation, suppression would not be appropriate.[4]

3. Modification of Terms of Warrant. Kern next argues that Sisk impermissibly modified the terms of the warrant. The search warrant commanded the searching officer to search the designated premises within 10 days of the issuance of the warrant, but Sisk instructed the bank employees that the bank records should be mailed to him as soon as possible, *or within 30 days*. This instruction was written on the inventory form which Sisk gave to the bank along with the search warrant. Kern contends that this instruction was an impermissible modification of the terms of the search warrant, because it extended the

---

[4]*State v. Parker*, 28 Wn. App. 425, 427, 626 P.2d 508 (1981); *see also United States v. Pennington*, 635 F.2d 1387, 1389-90 (10th Cir. 1980), *cert. denied*, 451 U.S. 938 (1981) (search by nonofficer without presence of officers is not basis for suppression of evidence where there is no prejudice to defendant).

"judicially authorized period of time for compliance with the warrant." We disagree. Sisk's instruction did not have legal force or purport to have legal force to change the judicially authorized period of time for compliance with the warrant.

4. Lack of Notice. Kern did not receive notice that the State had examined his bank records until criminal charges were brought against him, almost nine months after the warrant was issued. Kern first argues that he was entitled to such notice under CrRLJ 2.3(d), which provides in relevant part:

> (d) **Execution and Return With Inventory.** The peace officer taking property under the warrant shall give to *the person from whom or from whose premises the property is taken* a copy of the warrant and a receipt for the property taken . . . . The inventory shall be made in the presence of *the person from whose possession or premises the property is taken*, or in the presence of at least one person other than the officer.

(Emphasis added). The statutory language is clear and unambiguous in stating that notice is due to the person from whose premises or from whose possession property is taken. Here, the bank is the entity from whose possession and premises the records were taken. The rule does not require notice to all persons having a privacy interest in the seized property.

Whether or not required by the rule, Kern argues that general constitutional principles require that whenever the State invades a privacy interest, the holder of the privacy interest must be given notice. Kern relies on *United States v. Johns*, 948 F.2d 599 (9th Cir. 1991), *cert. denied*, 505 U.S. 1226 (1992), and *United States v. Freitas*, 800 F.2d 1451 (9th Cir. 1986). In *Johns*, however, the failure to give notice was deemed "nonfundamental" (not of constitutional magnitude). *Johns*, 948 F.2d at 603-04. In

spite of prejudice (the search would not have taken place but for the lack of notice), the court refused to suppress. In *Freitas*, the search took place in the defendant's home, the center of defendant's privacy interest. In each case, a federal court rule required that the defendant be given notice of the search.[5] Here, none of these circumstances is present, Washington's rule did not require notice to the defendant, and we hold the State was not required to notify Kern of the search.

5. <u>Failure to File Inventory and Return.</u> Kern finally argues that the bank records should be suppressed because Sisk failed to file a proper inventory and warrant return. Sisk filed the inventory and warrant return *before* the bank records were actually seized.

■ Sisk's premature filing of the inventory and return violated CrRLJ 2.3(d).[6] It is not proper for officers to file inventories of items seized in a search before the items are actually in police custody. Under the circumstances of this case, however, this departure from the rules was ministerial and harmless. The records seized were exactly the same as those specified in the original return and inventory filed by Sisk. Kern alleges no prejudice resulting from Sisk's premature filing. Thus, suppression is not appropriate.[7]

The motion to suppress was properly denied, and Kern's conviction is affirmed.

---

[5]We note the federal circuits are divided regarding whether the notice required by Fed. R. Crim. P. 41(d) is of constitutional status. *Compare United States v. Freitas*, 800 F.2d 1451 (9th Cir. 1986) and *United States v. Pangburn*, 983 F.2d 449, 455 (2d Cir. 1993).

[6]CrRLJ 2.3(d) states in relevant part: "**(d) Execution and Return With Inventory.** . . . The return shall be made within 3 court days and shall be accompanied by a written inventory of any property taken."

[7]*State v. Parker*, 28 Wn. App. 425, 426-27, 626 P.2d 508 (1981); see also 2 Wayne R. LaFave, Search and Seizure § 4.12(c) ("the 'overwhelming weight of authority' is to the effect that required warrant return procedures are ministerial and that failure to comply with them is not a ground for voiding an otherwise valid search.").

KENNEDY, A.C.J., and COLEMAN, J., concur.

Review denied at 130 Wn.2d 1003 (1996).