254 P.3d 883 (2011)
161 Wash.App. 307
STATE of Washington, Respondent,
v.
Brandon Gene OLLIVIER, Appellant.
No. 63559-0-I.
Court of Appeals of Washington, Division 1.
April 18, 2011.
*885 Stephen Paul Hobbs, Office of the Prosecuting Attorney, Seattle, WA, for Respondent.
Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
GROSSE, J.
¶ 1 It is not an abuse of discretion for the trial court to grant multiple continuances to ensure that defense counsel is adequately prepared even though the defendant objects to the majority of those continuances. Brandon Ollivier also raises additional issues, none of which have any merit. We affirm.

FACTS
¶ 2 Brandon Ollivier is a registered sex offender. In March 2007, he was living with two roommates both of whom were registered sex offenders. While in police custody for a community custody violation, Eugene Anderson, one of Ollivier's roommates, gave a taped interview to Detective Dena Saario. In that interview, Anderson stated that Ollivier had shown him a video of a young girl having sexual relations with a young boy. He also stated that Ollivier showed him other provocative photographs of young girls approximately 9 years old, who, although clothed, were provocatively posed.
*886 ¶ 3 Ollivier was arrested on April 13, 2007 and charged with possession of depictions of minors engaged in sexually explicit activity. He was arraigned on April 18, 2007. His initial speedy trial expiration date was June 29, 2007. A total of 22 continuances were granted before the trial took place 22 months later on March 9, 2009. Ollivier objected to 19 of the 22 continuances. There were primarily three reasons defense counsel sought the continuances: (1) need for an expert to review the computer content, (2) need to obtain information from the Washington State Department of Corrections (DOC), and (3) need to obtain information regarding the lead detective's resignation from the sheriff's office because an internal investigation found the detective dishonest.
¶ 4 Ollivier was convicted by jury of one count of possession of depictions of minors engaged in sexually explicit conduct and sentenced to 30 months.
¶ 5 Ollivier appeals contending that under the court rules and the state and federal constitutions, his right to a speedy trial was denied. Additionally, Ollivier argues that the informant's information was unreliable and that the search warrant was overbroad, not supported by probable cause, and improperly served.

ANALYSIS

Speedy Trial
¶ 6 Ollivier contends that the 22 continuances violated his constitutional right to a speedy trial under both the court rule and the federal and state constitutions. A trial court's decision to grant a continuance under CrR 3.3 will not be disturbed absent a showing of manifest abuse of discretion.[1] Even when the defendant objects, the granting of a continuance to allow counsel to adequately prepare and ensure effective representation does not constitute an abuse of discretion.[2] As noted in Ollivier's own briefing, each of "the continuances, standing alone, would not be [an] abuse of discretion." Under these circumstances, the trial court did not abuse its discretion in granting each of the continuances under CrR 3.3. The risk of going to trial without the requested information, for which defense counsel was waiting, far outweighed any delay in going to trial. There was no violation of the court rule.
¶ 7 CrR 3.3 was enacted for the purpose of enforcing a defendant's constitutional right to a speedy trial.[3] But it is a court rule and, as noted in State v. Iniguez,[4] compliance therewith does not necessarily guarantee that there has been no constitutional violation. Ollivier claims his constitutional rights were violated because he was incarcerated for over 22 months. He argues that such a length of time is presumptively prejudicial and violated his speedy trial rights under article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution.
¶ 8 A denial of Sixth Amendment rights is reviewed de novo.[5] In Iniguez, our Supreme Court held that article I, section 22 does not afford a defendant greater speedy trial rights than the federal Sixth Amendment does.[6] The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."[7] The right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment."[8] When a defendant's constitutional speedy trial rights are violated, the remedy is to dismiss the charges with prejudice.[9]
*887 ¶ 9 To determine whether a defendant's constitutional speedy trial rights were violated, courts balance four interrelated factors.[10] As a threshold matter, "a defendant must show that the length of the delay crossed a line from ordinary to presumptively prejudicial."[11] Once the defendant meets the threshold determination, the remaining factors need to be addressed. Citing Barker v. Wingo,[12] the Iniguez court noted the relevant factors to be the length and reason for the delay, whether the defendant asserted his right, and the ways in which the delay may have caused prejudice to the defendant.[13] Under the Barker inquiry, we consider the extent to which the length of delay stretches beyond the bare minimum required to trigger the inquiry.[14] Stated another way, the longer the delay, the more scrutiny should be applied to the circumstances surrounding the delay. The State agrees that under these circumstances, a 22-month delay here was presumptively prejudicial.[15] However, merely the fact that the time is presumptively prejudicial does not constitute a constitutional violation.
¶ 10 Here, Ollivier was originally charged with multiple counts of possession of depictions of minors engaged in sexually explicit conduct which could have subjected him to a long sentence. However, in the middle of the trial, the additional counts were dismissed and only one count went to the jury, resulting in an indeterminate sentence with a minimum of 30 months and a maximum of 10 years. In Barker, a 10-month incarceration was not found to be sufficiently oppressive. Indeed, "[l]ower courts have reached the same conclusion as to substantially longer periods of imprisonment" than that involved in Barker.[16]
¶ 11 Moreover, the presumption of prejudice needed to reach the additional Barker factors is not sufficient in and of itself to find actual prejudice. Although Ollivier objected to his counsel's requests for continuance, he does not specify what prejudice he in fact suffered. Actual prejudice to the defense is required.[17] None is present here.
¶ 12 Defense counsel requested each of the continuances. Five of the continuances were attributable to the defense's need to obtain an expert's opinion on the computer. On November 30, 2007, the basis of the continuances was the defense's need to obtain additional information from DOC and third parties. In September 2008, defense counsel discovered that the detective who had sworn out the warrant had resigned from the sheriff's office after facing allegations of dishonesty. The final seven continuances were entwined with obtaining the information from that internal investigation and briefing to suppress information obtained as a result of the warrant. Prejudice to Ollivier would have resulted had he gone to trial with an unprepared attorney. Although 22 months is a long time, that in and of itself does not establish actual prejudice, particularly, where, as here, the continuances were all requested by defense counsel. Our holding is in accord with the United States Supreme *888 Court's holding in Vermont v. Brillon.[18] There, the defendant, who was arrested on felony domestic assault and habitual offender charges, did not come to trial until three years later. The Brillon Court held that the delays incurred by Brillon's counsel and Brillon himself were not attributable to the State for speedy trial purposes. Although a delay from a systemic "breakdown in the public defender system" could be ascribed against the State, this was not the case either in Brillon or here.[19] The Brillon Court found that the two years that defense counsel "failed to move the case forward" were attributable to the defendant because the public defenders were not state actors.[20]
¶ 13 Although Ollivier remained in custody for over 22 months, it was not necessarily an undue delay. This is particularly true because the continuances were all requested by defense counsel who asserted that she was not prepared to go to trial without the necessary information. None of the continuances can be described as unreasonable.[21]

Validity of Search Warrant
¶ 14 Ollivier argues that there was insufficient probable cause to issue a search warrant and that the informant's information was unreliable. An affidavit for a search warrant establishes probable cause if it sets forth facts sufficient for a reasonable person to conclude that the defendant is probably involved in criminal activity and that the police will find evidence of that criminal activity at the place to be searched.[22] The issuance of a search warrant is a "highly discretionary" act.[23] Although the issue here was somewhat complicated with falsehoods by the detective, there was sufficient probable cause to issue the warrant even with all alleged falsehoods redacted therefrom. In State v. Coates[24] and State v. Gaines,[25] the Supreme Court held that a search warrant was still valid because, after the illegally obtained information was excluded, the remaining information independently established probable cause. Here, the information remaining established probable cause. Eugene Anderson, a registered sex offender and Ollivier's roommate, told his Community Corrections Officer (CCO) that Ollivier was looking at pornographic images on his computer, and Anderson was living with Ollivier at the same address that Ollivier registered as a sex offender. Ollivier had a prior conviction for first degree child molestation. Additionally, Anderson supplied a written statement to his CCO in which he averred that he had seen Ollivier view multiple suggestive photographs of children less than 10 years of age, both on the computer and in print form. Anderson said the girls were children because they had no breasts. Detective Saario interviewed Ollivier after being informed by the CCO of Anderson's allegations.
¶ 15 When an informant's tip forms the basis for probable cause, Washington courts apply the Aguilar-Spinelli test.[26] Under Aguilar-Spinelli, an affidavit of probable cause to support a search warrant must set forth facts establishing an informant's veracity and basis of knowledge. Ollivier attacks the validity of the warrant on the ground that the informant was not credible. He argues that the warrant fails to set forth facts that establish the informant's veracity and basis of knowledge about criminal activity at Ollivier's home as required by Aguilar-Spinelli.
*889 ¶ 16 An informant who trades information for a favorable sentencing recommendation has a strong motive to be accurate.[27] Moreover, an informant's personal observations can satisfy the basis of knowledge prong of Aguilar-Spinelli.[28] Here, Anderson told both his CCO and Detective Saario that he had seen child pornography on Ollivier's home computer. This was sufficient to establish knowledge.
¶ 17 Ollivier also contends that the warrant was invalid both because the physical items were not described with particularity and also that the search of the computer's contents was not sufficiently identified. Neither of these contentions have any merit. The search warrant specified a red lock box, computers, and the peripheral hardware associated with computers. The information obtained from the red lock box was suppressed.
¶ 18 The probable cause to seize the computer was established via Anderson's information. The warrant set forth with particularity the items that were to be seized. The affidavit for the search warrant set forth the reasons why the related computer items such as electronic storage media needed to be included. There was "a sufficient nexus between the targets of the search and the suspected criminal activity."[29] The officers could identify with reasonable certainty the items to be seized, computers, storage media, and related items. The actual search of the computer system was also included with specificity in the warrant, in particular with its citation to the statute which Ollivier was accused of violating.[30] As noted in State v. Riley,[31] particularity can be achieved by the specification of the suspected crime. Viewing the warrant in a commonsense manner, it is sufficiently particular because it references the particular crimes being investigated in the case.

Execution of Search Warrant
¶ 19 Ollivier argues that the warrant was not shown to him as required by CrR 2.3(d). CrR 2.3(d) provides:
Execution and Return With Inventory.
The peace officer taking property under the warrant shall give to the person from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken. If no such person is present, the officer may post a copy of the search warrant and receipt. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the person from whose possession or premises the property is taken, or in the presence of at least one person other than the officer. The court shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.
Although the rule requires that officers conducting a search provide the occupant with a copy of the warrant prior to commencing the search, procedural noncompliance does not compel invalidation of an otherwise sufficient warrant or suppression of the fruits of the search absent a showing of prejudice.[32] In State v. Aase,[33] this court held that procedural noncompliance does not invalidate an otherwise valid warrant or require suppression without a concomitant showing of prejudice.
¶ 20 A similar conclusion was reached in State v. Ettenhofer.[34] There, the court held a search unconstitutional where police had received telephonic approval to search but did not have a written warrant as required. Ettenhofer invalidated the search based on the *890 lack of a written warrant. But the Ettenhofer court also noted that a ministerial mistake must be prejudicial to justify reversal, stating:
If our concern were only with these violations, we would next consider whether the violations prejudiced the defendant because, constitutional considerations aside, rules guiding the warrant procedure are ministerial and reversal, therefore, does not follow as a matter of course. See State v. Kern, 81 Wash.App. 308, 311, 914 P.2d 114, review denied, 130 Wash.2d 1003, 925 P.2d 988 (1996); see also State v. Wible, 113 Wash.App. 18, 25, 51 P.3d 830 (2002) ("[A] ministerial mistake is grounds for invalidation of a search warrant only if prejudice is shown."). But because we conclude that the written warrant failure violated Ettenhofer's constitutional rights against unreasonable searches, which renders the search invalid as a matter of law, prejudice need not be shown. See State v. Clausen, 113 Wash.App. 657, 660, 56 P.3d 587 (2002) (Absent an exception, warrantless searches are invalid as a matter of law under the state and federal constitutions.).[[35]]
Here, Ollivier has not shown any prejudice by the seizure of evidence subject to a valid warrant.
¶ 21 Ollivier relies on United States v. Gantt[36] to support his contention that because he was not given a copy of the warrant until the conclusion of the search, the evidence seized during the search of his apartment should be suppressed. In Gantt, the court relied on former Rule 41(d) to suppress evidence seized under a search warrant when the occupant was not provided a copy of the search warrant until the search was completed and she had been arrested and transported to the Federal Bureau of Investigation headquarters. But as recently noted in United States v. Ortega-Barrera,[37] even the Gantt court recognized that evidence should not be suppressed unless there was a deliberate disregard of the rule or if the defendant was prejudiced.[38] Moreover, the Ortega-Barrera court noted that the continuing validity of Gantt is questionable.[39] See United States v. Mann,[40] in which the court stated:
We note that the continuing validity of our holding in Gantt has been directly called into question by at least one court. See People v. Ellison, 4 Misc.3d 319, 773 N.Y.S.2d 860, 868 & n. 5 (S.Ct.2004) (asserting that Gantt appears to have been "fully abrogate[d]" by the Supreme Court's decisions in United States v. Banks, 540 U.S. 31, 124 S.Ct. 521, 524-25, 157 L.Ed.2d 343 (2003), and Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 1292 & n. 5, 157 L.Ed.2d 1068 (2004)); see also United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir.2004) ("As the Supreme Court recently reaffirmed in Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), the Fourth Amendment does not necessarily require officers to serve a warrant at the outset of a search"). While dicta in the Supreme Court's recent decision in Groh v. Ramirez casts serious doubt both on our interpretation of Rule 41 and our reasoning in Gantt, it fails definitively to abrogate our holding.
Thus, Ollivier's reliance on Gantt is misplaced.

Statement of Additional Grounds (SAG)
¶ 22 Ollivier's SAG raises the same issues as counsel does in her briefing. The only additional ground he raises is without merit. He disputes the legislature's classification of this crime. However, his argument is based on crimes in another statute and therefore not comparable.
¶ 23 Accordingly, we affirm the judgment and sentence.
WE CONCUR: SCHINDLER and ELLINGTON, JJ.
NOTES
[1] State v. Nguyen, 131 Wash.App. 815, 819, 129 P.3d 821 (2006).
[2] State v. Campbell, 103 Wash.2d 1, 15, 691 P.2d 929 (1984).
[3] State v. Kenyon, 167 Wash.2d 130, 136, 216 P.3d 1024 (2009).
[4] 167 Wash.2d 273, 287, 217 P.3d 768 (2009).
[5] Iniguez, 167 Wash.2d at 280, 217 P.3d 768.
[6] Iniguez, 167 Wash.2d at 289, 217 P.3d 768.
[7] U.S. CONST. amend. VI.
[8] Barker v. Wingo, 407 U.S. 514, 516 n. 2, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (citation omitted).
[9] Barker, 407 U.S. at 522, 92 S.Ct. 2182.
[10] Iniguez, 167 Wash.2d at 283, 217 P.3d 768.
[11] Iniguez, 167 Wash.2d at 283, 217 P.3d 768.
[12] Barker v. Wingo, 407 U.S. 514, 531-32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
[13] Iniguez, 167 Wash.2d at 283-84, 217 P.3d 768 (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182).
[14] Iniguez, 167 Wash.2d at 283-84, 217 P.3d 768 (citing Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)).
[15] Iniguez, 167 Wash.2d at 283, 217 P.3d 768.
[16] See 2 W. LaFave & J. Israel, Criminal Procedure § 18.2(e), at 129-130 n.76 (2007); Jackson v. Ray, 390 F.3d 1254 (10th Cir.2004) (defendant incarcerated over 4 years); United States v. Herman, 576 F.2d 1139 (5th Cir.1978) (defendant incarcerated during entire 22-month delay); Hartridge v. United States, 896 A.2d 198 (D.C. 2006) (27 months); Smith v. State, 275 Ga. 261, 263, 564 S.E.2d 441 (2002) (defendant incarcerated 19 months, but "no evidence that appellant's pre-trial incarceration was oppressive to a degree beyond that which necessarily attends imprisonment"). Compare Berry v. State, 93 P.3d 222, 237 (Wyo.2004) (incarceration of defendant for 720 days, which "necessarily impacted his employment opportunities, financial resources and association," alone established prejudice).
[17] Doggett, 505 U.S. at 659, 112 S.Ct. 2686 (O'Connor, J., dissenting).
[18] ___ U.S. ___, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009).
[19] Brillon, 129 S.Ct. at 1292 (citation omitted).
[20] Brillon, 129 S.Ct. at 1287 (citation omitted).
[21] See Iniguez, 167 Wash.2d at 294, 217 P.3d 768.
[22] State v. Maddox, 152 Wash.2d 499, 505, 98 P.3d 1199 (2004) (citing State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999)).
[23] State v. Chenoweth, 160 Wash.2d 454, 477, 158 P.3d 595 (2007).
[24] 107 Wash.2d 882, 888-89, 735 P.2d 64 (1987);
[25] 154 Wash.2d 711, 718-20, 116 P.3d 993 (2005).
[26] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); State v. Jackson, 102 Wash.2d 432, 433, 688 P.2d 136 (1984).
[27] State v. Bean, 89 Wash.2d 467, 469-71, 572 P.2d 1102 (1978).
[28] State v. Wolken, 103 Wash.2d 823, 827, 700 P.2d 319 (1985).
[29] State v. Carter, 79 Wash.App. 154, 158, 901 P.2d 335 (1995).
[30] RCW 9.68A.070. Possession of depictions of minor engaged in sexually explicit conduct.
[31] State v. Riley, 121 Wash.2d 22, 28, 846 P.2d 1365 (1993).
[32] State v. Aase, 121 Wash.App. 558, 567, 89 P.3d 721, 726 (2004).
[33] 121 Wash.App. 558, 567, 89 P.3d 721 (2004).
[34] 119 Wash.App. 300, 79 P.3d 478 (2003).
[35] 119 Wash.App. at 307, 79 P.3d 478.
[36] 194 F.3d 987 (9th Cir.1999).
[37] No. CR10-5442RBL, 2010 WL 4718892 (W.D.Wash.2010).
[38] Gantt, 194 F.3d at 994.
[39] 2010 WL 4718892, at *3 n.2.
[40] 389 F.3d 869, 875 n. 1 (9th Cir.2004).