# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47502-2-II |
| Respondent, | |
| v. | |
| MARBELLA HERNANDEZ-LORENZO, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Marbella Hernandez-Lorenzo appeals her conviction of maintaining a dwelling for controlled substances. We conclude that the trial court did not err by denying Hernandez-Lorenzo's motion to suppress, and that sufficient evidence existed to convict her. We do not consider whether the confidential reliable informant's (CRI) identity should have been disclosed, whether the trial court commented on the evidence, or whether the trial court abused its discretion by denying Hernandez-Lorenzo's motion for a new trial. We affirm.

## FACTS

The State charged Hernandez-Lorenzo with possession of a controlled substance, methamphetamine, with intent to deliver and with maintaining a dwelling for controlled substances.[1] Hernandez-Lorenzo resided in a mobile home in Clark County and rented rooms to

---

[1] RCW 9A.08.020(3); RCW 69.50.401(1); (2)(b); RCW 69.50.402(1)(f).

three people, including Jaime Cardenas-Paniagua, her codefendant.[2] Hernandez-Lorenzo spent four months in California and returned home one month before the police executed a search warrant at her residence.

Detective Robert Latter executed an affidavit in support of a search warrant. CP at 22. He applied for the warrant after a CRI working for the Clark Vancouver Regional Drug Task Force executed a controlled buy of methamphetamine from Cardenas-Paniagua. The CRI purchased methamphetamine from Cardenas-Paniagua while in Hernandez-Lorenzo's residence. Latter sought the search warrant for the mobile home based on an affidavit describing the controlled buy.

On July 30, 2014, a judge issued a search warrant for the mobile home. The police executed it the next day. Hernandez-Lorenzo was home during the warrant's execution. The officers found 750 grams of methamphetamine valued at over $20,000, over $42,000 in cash, two safes, three functional scales, a notebook with drug notes, and packaging material. A portion of the methamphetamine was discovered in a laundry detergent box that included a brick shaped package wrapped in foil under some of the detergent. Under the foil, the officers found a Ziploc-style bag that contained a white crystalline substance.

Officers questioned Hernandez-Lorenzo at the scene, and she confessed to Latter that she knew Cardenas-Paniagua and his nephew sold illegal drugs out of her residence. She saw numerous people come to the residence to purchase drugs. Her renters paid for their portion of the rent and utilities with the cash proceeds from drug sales.

---

[2] Cardenas-Paniagua pled guilty to possession of a controlled substance with intent to deliver.

I.      PROCEDURAL HISTORY

        A.      MOTION TO SUPPRESS

        On October 9, 2014, Hernandez-Lorenzo filed a motion to suppress pursuant to CrR 3.6. She argued that the search warrant did not specifically identify her and therefore, the issuing judge only knew that a controlled buy occurred with someone at the residence, but not with whom.

        The State filed a response to the motion.  The State argued that the search warrant was supported by probable cause and the affidavit for the warrant established the CRI's basis of knowledge and veracity.  The response contended that there was a nexus between the crime and the evidence to be seized and a nexus between said evidence and Cardenas-Paniagua's residence.

        On November 4, 2014, the trial court heard arguments on the motion to suppress. Hernandez-Lorenzo argued that there was no nexus to the residence.  The trial court denied the motion.[3]

        B.      MOTION FOR IN CAMERA REVIEW OF THE CRI

        Hernandez-Lorenzo filed a motion for both an in camera interview of the CRI and disclosure of the CRI's identity.  The trial court granted the motion for an in camera interview of the CRI, but denied disclosure of the CRI's identity.  After the in camera interview, the trial court sealed the interview video record.

---

[3] The trial court heard no testimony at the motion to suppress.  It merely reviewed the search warrant affidavit for probable cause.  Nonetheless, the trial court entered written findings of fact.

C.    CONFESSION HEARING

During trial, the court held a hearing pursuant to CrR 3.5. Latter testified that he read Hernandez-Lorenzo her *Miranda*[4] warnings when he placed her in handcuffs, and she voluntarily waived her rights and agreed to speak with him. After initially denying involvement in drug sales, she admitted that she knew Cardenas-Paniagua was selling drugs from the residence. She also admitted that Jose Enricka Comacho Cardenas lived in the residence and sold drugs out of the residence. She admitted to seeing people come to conduct drug transactions in the home on numerous occasions.

At the hearing, Hernandez-Lorenzo testified that Latter did not *Mirandize* her. She testified that Detective Shane Hall told her the police would take her child away, but if she talked to them, they would leave her alone. She told Latter she did not know anything.

The trial court ruled that the statements Hernandez-Lorenzo made to Latter were admissible because he informed her of her rights and she voluntarily waived them, and Latter did not trick or coerce Hernandez-Lorenzo into her admissions.[5]

II.    TRIAL

A.    TESTIMONY

The matter proceeded to trial and the facts presented above are consistent with the trial testimony.

At the close of the State's evidence, Hernandez-Lorenzo moved to dismiss both charges. She argued the State had not met its burden on either charge. The trial court denied the motion.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] The trial court did not enter written findings of fact and conclusions of law.

The defense then called witnesses who provided the following testimony. Cardenas-Paniagua lived with Hernandez-Lorenzo in the mobile home with his nephew and his nephew's girlfriend. Cardenas-Paniagua conducted drug deals in the residence. His nephew was his partner in the deals. Cardenas-Paniagua testified that Hernandez-Lorenzo was not present during the drug deals. He paid rent and utilities to Hernandez-Lorenzo in cash, but he testified that she had nothing to do with the drug dealing.

Hernandez-Lorenzo testified that she did not know her roommates delivered or possessed controlled substances with the intent to deliver. She worked long hours, six days a week as a waitress and a manager at a restaurant in Portland. Hernandez-Lorenzo denied making the confession to which Latter testified. She never saw drug notes, digital scales, packaging material, or a safe. She was surprised when officers found 750 grams of methamphetamine, over $42,000 of cash, two safes, three functional scales, and packaging material in the house.

B.     VERDICT AND SENTENCING

The jury found Hernandez-Lorenzo not guilty of possession of a controlled substance with intent to deliver and guilty of maintaining a dwelling for controlled substances. The trial court sentenced Hernandez-Lorenzo to a parenting sentencing alternative[6] with 12 months of community custody. Hernandez-Lorenzo appeals.

ANALYSIS

I.     MOTION TO SUPPRESS

Hernandez-Lorenzo argues that the trial court erred by denying her motion to suppress because the search warrant affidavit neither established the reliability of the CRI nor a nexus

---

[6] RCW 9.94A.655.

between the criminal activity and her residence. We disagree. She also argues that the warrant return was untimely. Although it was filed late, there was no prejudice.

A.    STANDARD OF REVIEW

We review the issuance of a search warrant for an abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). Generally, we give great deference to the issuing judge's probable cause determination. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994). But,

> at the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause. Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion we review de novo.

*State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008) (internal citations omitted).

Before a magistrate issues a search warrant, there must be a determination of probable cause. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). "An application for a warrant must state the underlying facts and circumstances on which it is based in order to facilitate a detached and independent evaluation of the evidence by the issuing magistrate." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *Thein*, 138 Wn.2d at 140. Probable cause for a search "requires a nexus between criminal activity and the item to be seized and between that item and the place to be searched." *Neth*, 165 Wn.2d at 183.

B.      THE SEARCH WARRANT AFFIDAVIT ESTABLISHED PROBABLE CAUSE

1.      CONFIDENTIAL RELIABLE INFORMANT

Hernandez-Lorenzo argues that the search warrant affidavit did not establish the reliability of the CRI.  We disagree.

An informant's tip, as detailed in an affidavit, may create probable cause for the issuance of a search warrant if it establishes the basis of the informant's information as well as the credibility of the informant under the two-prong *Aguilar-Spinelli* test.  *State v. Ibarra*, 61 Wn. App. 695, 698, 812 P.2d 114 (1991).  *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  Generally, both prongs of the test must be present to establish probable cause.  *State v. Jackson*, 102 Wn.2d 432, 437, 688 P.2d 136 (1984).

When properly executed, a controlled buy can provide the facts and circumstances necessary to satisfy both prongs of the test for probable cause.  *State v. Casto*, 39 Wn. App. 229, 234, 692 P.2d 890 (1984).  "In a controlled buy, an informant claiming to know that drugs are for sale at a particular place is given marked money, searched for drugs, and observed while sent into the specified location.  If the informant 'goes in empty and comes out full,' his assertion that drugs" were present is proven and confirms his reliability.  *Casto*, 39 Wn. App. at 234 (internal quotation omitted).  Here, the CRI properly executed a controlled buy and the search warrant affidavit details it.  Therefore, the search warrant affidavit demonstrated the CRI's reliability.

2.     NEXUS EXISTED FOR PROBABLE CAUSE

Hernandez-Lorenzo argues that the search warrant affidavit did not establish a sufficient nexus between the residence and the alleged criminal activity. We disagree.

The existence of probable cause is to be evaluated on a case-by-case basis. *State v. Helmka*, 86 Wn.2d 91, 93, 542 P.2d 115 (1975). "Absent a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law." *Thein*, 138 Wn.2d at 147.

In *Maddox*, the warrant authorized a search for evidence of methamphetamine dealing and methamphetamine. 152 Wn.2d at 510. It "included authorization to search for nonsaleable residue, scales, baggies, customer lists and accounts, and currency." *Maddox*, 152 Wn.2d at 510. "[A] reasonable person could infer from the facts and circumstances set forth in the affidavit that evidence of methamphetamine dealing remained at Maddox's home" and the warrant properly created a nexus. *Maddox*, 152 Wn.2d at 510. The court made clear that "the magistrate may infer the existence of evidence from the facts and circumstances provided in the affidavit. As we have often stated, the affidavit is not required to establish a prima facie case of guilt, but rather a likelihood that evidence of criminal activity will be found." *Maddox*, 152 Wn.2d at 510-11. The search warrant affidavit in *Maddox* detailed a controlled buy by the informant and the affiant's training and experience in investigating drug crimes. 152 Wn.2d at 511-12.

Here, ample facts existed in the affidavit from which a magistrate could infer that evidence of drugs and drug dealing would be in the mobile home. The affidavit recounted the controlled buy from the mobile home. It provided a factual nexus between the residence and the crime. Because "common sense is 'the ultimate yardstick' of probable cause," a common sense evaluation of the facts in the affidavit indicated that someone residing in the home was involved in ongoing

sales of methamphetamine and that evidence of that dealing would probably be found there. *Maddox*, 152 Wn.2d at 512 (quoting *State v. Patterson*, 83 Wn.2d 49, 55, 515 P.2d 496 (1973)).

Because probable cause existed to believe that the residence contained methamphetamine and evidence of drug dealing when it issued the warrant, the issuing magistrate properly issued the search warrant.

C.      TIMELINESS OF SEARCH WARRANT RETURN

Hernandez-Lorenzo also argues that the trial court erred by denying her motion to suppress because the search warrant was untimely returned under CrR 2.3 because the officers returned the warrant five days after its execution. We disagree.

CrR 2.3(c) states: "The warrant shall be directed to any peace officer and shall command the officer to search, within a specified period of time not to exceed 10 days, the person, place, or thing named for the property or person specified." The warrant should be returned within three days of its execution. RCW 69.50.509. The magistrate issued this warrant on July 30, 2014, and the officers executed the warrant on July 31, 2014. Latter returned the property report on August 5, 2014.

"Absent constitutional considerations, the rules for execution and return of a warrant are essentially ministerial in nature." *State v. Kern*, 81 Wn. App. 308, 311, 914 P.2d 114 (1996); *see e.g.*, *State v. Parker*, 28 Wn. App. 425, 426, 626 P.2d 508 (1981). Procedural noncompliance with these rules does not require suppression of evidence or invalidate a warrant absent a showing of prejudice to the defendant. *Kern*, 81 Wn. App. at 311. Because Hernandez-Lorenzo does not show any prejudice, the untimely return of the warrant does not require suppression.

II.  SUFFICIENCY OF THE EVIDENCE

Hernandez-Lorenzo argues that the State presented insufficient evidence to convict her of maintaining a dwelling for controlled substances.  We disagree.

A.  STANDARD OF REVIEW

The State is required to prove all elements of a crime charged beyond a reasonable doubt. *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006).  We view the evidence in the light most favorable to the State to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.  *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).  A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.  *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).  Circumstantial evidence and direct evidence are equally reliable.  *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).  We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.  *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

B.  SUFFICIENT EVIDENCE FOR CONVICTION

RCW 69.50.402(1)(f) provides that it is unlawful for any person to:

> Knowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping or selling them in violation of this chapter.

Police officers found a large amount of methamphetamine in the mobile home, including nearly a pound of methamphetamine in laundry detergent above Hernandez-Lorenzo's washing machine and dryer.  The State's evidence included testimony that Hernandez-Lorenzo confessed

that her roommates were conducting drug deals out of the residence. She knew the men to whom she rented rooms were dealing in methamphetamine from the residence and that the proceeds of the deals paid for their rent and utilities.

Therefore, sufficient evidence existed to convict Hernandez-Lorenzo beyond a reasonable doubt of maintaining a dwelling for controlled substances.

III.     JURY INSTRUCTION 11-ACCOMPLICE LIABILITY

Hernandez-Lorenzo argues that the trial court improperly commented on the evidence by instructing the jury on instruction 11, using the following language: "A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not." Clerk's Papers at 156. She claims it negated her defense that she neither had knowledge of her roommates' drug dealing nor was she present in the residence when it occurred. The State disagrees and argues that because Hernandez-Lorenzo does not cite to any legal authority for her proposition, we should assume that counsel has not found support, and we should not consider the issue. We agree with the State.

Under RAP 10.3(a)(6), an appellant's brief must include assignments of error, arguments supporting the issues presented for review, and citations to legal authority and references to relevant parts of the record. *See State v. Harris*, 164 Wn. App. 377, 389 n.7, 263 P.3d 1276 (2011); *Thomas*, 150 Wn.2d at 874 (without argument or authority to support it, an assignment of error is waived). If an appellant's brief does not include argument or authority to support its assignment of error, the assignment of error is waived. *Thomas*, 150 Wn.2d at 874. We need not consider arguments that are not developed in the briefs and for which a party has not cited authority. *Harris*, 164 Wn. App. at 389 n.7. We assume that if the appellant does not cite authority for a proposition that she has not found any. *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978).

11

Hernandez-Lorenzo cites to one case that addresses the issue of WPIC[7] jury instructions, but it is inapplicable to her situation. She did not provide any support for her argument and did not analyze why the case she cited is analogous to her own case. Because Hernandez Lorenzo failed to adequately brief the issue, we do not consider it.

IV.    FAILURE TO DISCLOSE CRI'S IDENTITY

Hernandez-Lorenzo argues that the trial court erred by refusing to disclose the CRI's identity. We do not consider the issue.

As previously stated, under RAP 10.3(a)(4) and (6), if an appellant raises issues but does not include arguments with citations to both legal authority and relevant parts to the record, we need not consider the argument. It is waived. *Thomas*, 150 Wn.2d at 874.

Hernandez-Lorenzo does not cite to any legal authority or any portion of the record to support her argument that the CRI's identity should have been disclosed. In addition, Hernandez-Lorenzo asks us to review the in camera hearing, however, it is not part of our record. Therefore, we do not consider the issue.

V.    MOTION FOR A NEW TRIAL OR ARREST OF JUDGMENT

Hernandez-Lorenzo argues that the trial court erred in denying her motion for a new trial because of cumulative error. We do not consider the issue on the merits.

The rules of appellate procedure provide that "[a] party should arrange for the transcription of all those portions of the verbatim report of proceedings necessary to present the issues raised on review." RAP 9.2(b). Because Hernandez-Lorenzo is the appellant, she had the burden of providing the motion for a new trial record. RAP 9.2(b); *see also State v. Bennett*, 168 Wn. App. 197, 207 n.9, 275 P.3d 1224 (2012). She did not provide us the record. We may decline to address

---

[7] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL.

a claimed error when faced with a material omission in the record. *State v. Wade*, 138 Wn.2d 460, 465, 979 P.2d 850 (1999).

We decline to address this claimed error because Hernandez-Lorenzo failed to present briefing with citations to the record and legal authority, or the record of the hearing.

We affirm Hernandez-Lorenzo's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, P.J.

Sutton, J.