89 P.3d 721 (2004)
121 Wash.App. 558
STATE of Washington, Respondent.
v.
Christian Martin AASE, Appellant.
No. 28584-3-II.
Court of Appeals of Washington, Division 2.
May 4, 2004.
*722 Thomas E. Weaver, Attorney at Law, Port Orchard, WA, for Appellant.
Justin Bailey Zaug, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.

PART PUBLISHED OPINION
QUINN-BRINTNALL, C.J.
Christian M. Aase appeals his bench trial conviction for possession of methamphetamine. He contends that the trial court should have suppressed the evidence because police did not serve the search warrant at the "outset" of the search. He also argues that the search warrant was not issued on probable cause. Pro se, Aase claims ineffective assistance of counsel and he makes other claims relating to probable cause and execution of the search warrant; he also asserts that the police continued to question him after he asked for an attorney and that his statements should have been suppressed. Because the record supports the trial court's findings that evidence supporting the warrant was sufficient and its execution was proper, we affirm.

FACTS
On September 12, 2001, the Honorable Anna Laurie issued a search warrant based on the affidavit of Detective Roy Alloway of the West Sound Narcotics Enforcement Team, Kitsap County. In the affidavit, Alloway described four separate informants' reports that the residents of 1008 A Kitsap Street, Port Orchard, Kitsap County ("1008 A"), were selling methamphetamine.
Alloway received information from the first informant in May 2001. On June 12, 2001, after receiving a second report, Alloway conducted a "knock and talk" at the address. *723 Alloway found Aase and his roommate, Karen Young, at the residence. Aase was "uncooperative" and demanded that the officers leave the property. During the visit, Alloway noticed a fan running in a vent in the roof. Alloway also saw empty mason jars of "the style frequently seen at methamphetamine lab operations" and a trash can with plastic tubing hanging out of it (again, "commonly seen at methamphetamine lab operations") at the rear door of the residence, visible from the sidewalk. Exhibit 1 at 2. Alloway arrested Young on an outstanding unrelated warrant and left the Aase residence without going inside.
On September 5, 2001, another detective received a third tip from a Kitsap County Jail inmate, who reported that Aase was selling methamphetamine. Then, on September 11, 2001, Alloway answered a call from the fourth informant, Theresa Anderson-Deitchler, who told him that she had known Young for several months and knew that Young and Aase were involved in methamphetamine distribution. Anderson-Deitchler, a former methamphetamine user, stated that her motive for making the report was to eliminate a source of methamphetamine, one that was providing the drug to kids and "ripping a lot of people off." Exhibit 1 at 3. She stated that she had been at 1008 A earlier that day and had seen a methamphetamine sale take place. Anderson-Deitchler described both the exterior and interior of the residence and reported seeing a safe, jewelry, needles, and approximately an ounce of methamphetamine. She also knew that Aase was on home detention, which Alloway confirmed.
After receiving Anderson-Deitchler's report, Alloway established that Anderson-Deitchler had no criminal record involving deceit, perjury, or falsification, but she did have a conviction for possession of methamphetamine. Alloway drove by 1008 A and confirmed that the outside of the residence matched Anderson-Deitchler's description, and he remembered that the interior was as Anderson-Deitchler described it from having looked in through the front door during his own June 12 visit.
Alloway obtained a search warrant and he and other officers searched Aase's residence on September 12, 2001. At the suppression hearing, Alloway testified that he gave Aase a copy of the warrant "several minutes" into the search when Aase was sitting on the couch and that he left a copy of the warrant on a shelf near the bedroom. In contrast, Aase testified at the suppression hearing that the police ordered him to the ground and never showed him the warrant during the search. He also testified that he repeatedly asked to see it. Young also testified that she heard Aase asking to see the warrant. According to Aase, he did not see the warrant until he got out of jail roughly a week later.
On December 3, 2001, Aase and his attorney, Matthew Kuehn, appeared before the Honorable Jay B. Roof. Before the hearing could take place, Aase complained that he was unsatisfied with his attorney's representation. Among other things, he complained that Kuehn was not spending enough time on his case. Aase and Kuehn described their disagreement as to the best way to defend the casefor example, Aase wanted to have the alleged methamphetamine independently tested, but Kuehn was aware of a possible "hold back" charge (with the possibility of substantially more jail time) if this request were made. After a lengthy on-record discussion, the court allowed Aase and Kuehn to discuss the matter off the record for 15 minutes. When the two returned, Aase agreed to waive speedy trial, which gave Kuehn and Aase more time to work on the case.
At Aase's January 28, 2002 suppression hearing before the Honorable Thomas Majhan, Aase (still represented by Kuehn) argued that the evidence should be suppressed because the warrant was not supported by probable cause and not executed properly. In denying the motion, the court concluded that the warrant was supported by probable cause and that the law does not require a warrant to be served at the outset of the search.
Aase then moved for reconsideration, arguing that under United States v. Gantt, 194 F.3d 987 (9th Cir.1999), the evidence should *724 be suppressed.[1] The court resolved the dispute in the testimony between Alloway and Aase regarding the delivery of the warrant in the State's favor, stating that it would "accept [Alloway's] testimony as a verity." Report of Proceedings (RP) (January 31, 2002) at 9. Without specifically holding that Gantt did not apply, the trial court again rejected Aase's motion to reconsider.
Following a bench trial on stipulated facts, Aase was convicted of possession of methamphetamine and sentenced to 30 days in jail.[2] He appeals his conviction.

ANALYSIS
CHALLENGED FINDING OF FACT
Aase contends that Finding of Fact XIII, that "Detective Alloway provided the defendant with a copy of the search warrant at the time of the search" (Clerk's Papers (CP) at 51 (emphasis added)), is not supported by substantial evidence. He also contends that even if that finding of fact is supported by substantial evidence, the finding does not address when during the search Alloway provided the warrant.
When reviewing the denial of a suppression motion, we decide whether substantial evidence supports the findings of fact. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999); State v. Hill, 123 Wash.2d 641, 644, 647, 870 P.2d 313 (1994). We review de novo the trial court's conclusions of law. Mendez, 137 Wash.2d at 214, 970 P.2d 722. Where the trial court's findings of fact and conclusions of law are supported by substantial but disputed evidence, we will not disturb its ruling. State v. Smith, 84 Wash.2d 498, 505, 527 P.2d 674 (1974); State v. Chapman, 84 Wash.2d 373, 376, 526 P.2d 64 (1974). Credibility determinations are for the trier of fact and are not subject to our further review. State v. McCrorey, 70 Wash.App. 103, 114, 851 P.2d 1234, review denied, 122 Wash.2d 1013, 863 P.2d 73 (1993), abrogated on other grounds by State v. Head, 136 Wash.2d 619, 964 P.2d 1187 (1998).
Substantial evidence supports the finding that Alloway provided a copy of the warrant to Aase "at the time of the search." CP at 51. Alloway testified that he handed a copy to Aase "several minutes" into the search, after the area had been secured and Aase was sitting on the couch. RP (January 28, 2002) at 21. While Young, Aase's roommate, testified that Aase repeatedly asked for the warrant, she never testified as to when Aase actually received the warrant. Aase argues that the trial court should not have accepted Alloway's testimony based on his statement that "I don't recall the sequence at that point. It really didn't matter to me." RP (January 28, 2002) at 22. But Aase takes this statement out of context. Alloway's "sequence" testimony was that he did not remember if Aase returned the warrant to him when Aase was taken to jail.
EXECUTION OF THE SEARCH WARRANT
We next address whether delivering the warrant "several minutes" into the search requires suppression. Aase contends that the evidence against him should be suppressed under the criminal rules, the Fourth Amendment of the United States Constitution, and Article I, section 7 of the Washington Constitution.[3]
Aase first argues that the Ninth Circuit's opinion in Gantt requires that we invalidate a search where a defendant who was present at the time of a search did not immediately receive a copy of the warrant.
Under CrR 2.3(d):
The peace officer taking property under the [search] warrant shall give to the person *725 from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken. If no such person is present, the officer may post a copy of the search warrant and receipt.
The wording of former FED.R.CRIM.P. 41(d) (2000)[4] is nearly identical, although the Washington rule is actually more explicit that a copy of the warrant must be given to the occupant of the premises, if present.
In Gantt, the Ninth Circuit relied on former Rule 41(d) to suppress evidence when the occupant of a residence was not provided a copy of a search warrant until the search was completed and she had been arrested and transported to the Federal Bureau of Investigation (FBI) headquarters. 194 F.3d 987. Federal agents directed Gantt to sit in a hallway while they conducted a three-hour search of her apartment. Even after the defendant asked to see the warrant, the agents showed her only the face of the warrant. Gantt, 194 F.3d at 996. The court held, "absent exigent circumstances, if a person is present at the search of her premises, Rule 41(d) requires officers to give her a complete copy of the warrant at the outset of the search." Gantt, 194 F.3d at 994 (emphasis added). The court noted that a "technical" (as opposed to "fundamental") violation of Rule 41(d) would not usually demand suppression, but that here it did: "`[T]echnical' violations of Rule 41(d) require suppression only if there was a `deliberate disregard of the rule' or if the defendant was prejudiced.... Suppression is justified here because the violation was deliberate." Gantt, 194 F.3d at 994 (emphasis added) (citing United States v. Negrete-Gonzales, 966 F.2d 1277, 1283 (9th Cir.1992)). See also United States v. Johnson, 660 F.2d 749, 753 (9th Cir.1981), cert. denied, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982) ("prejudice" in this context means the search would otherwise not have occurred or would have been less intrusive absent the error).
Aase also argues that the Gantt holding is based on the Fourth Amendment and requires suppression here. But the Fourth Amendment compels automatic suppression only where there is a "fundamental" violation of Rule 41; fundamental violations are those "render[ing] the search unconstitutional under traditional fourth amendment standards." United States v. Vasser, 648 F.2d 507, 510 (9th Cir.1980) (citing United States v. Burke, 517 F.2d 377, 386 (2d Cir.1975)), cert. denied, 450 U.S. 928 (1981). And the Gantt court explicitly found a deliberate violation, thus avoiding the question of whether the violation was "technical" or "fundamental." 194 F.3d at 994.
The Gantt defendant waited three hours and was never able to examine a complete copy of the warrant. Here, there was substantial evidence that Aase received a full copy of the warrant only minutes into the search. "[I]t is reasonable for an officer executing a search warrant at a residence to briefly detain occupants of that residence, to ensure officer safety and an orderly completion of the search." State v. King, 89 Wash. App. 612, 618-19, 949 P.2d 856 (1998). Thus, neither Gantt nor the Fourth Amendment compels suppression here.
We next address Aase's argument that we must suppress the evidence under Article I, section 7 of our state constitution. Whether the Washington constitution provides a level of protection different from the federal constitution is determined by the six nonexclusive Gunwall[5] factors. State v. Young, 123 Wash.2d 173, 179, 867 P.2d 593 (1994). Because we examine the same constitutional provision at issue in Gunwall, we adopt the *726 court's analysis of factors one, two, three, and five. State v. Ferrier, 136 Wash.2d 103, 111, 960 P.2d 927 (1998); State v. Boland, 115 Wash.2d 571, 576, 800 P.2d 1112 (1990). As for the fourth factor, we examine preexisting state law to determine what level of protection this state has historically accorded this subject. Ferrier, 136 Wash.2d at 111, 960 P.2d 927. And in doing so, we reject Aase's argumentWashington cases have been consistent in finding that absent a showing of prejudice to the defendant, procedural noncompliance does not compel invalidation of an otherwise sufficient warrant or suppression of its fruits. State v. Kern, 81 Wash.App. 308, 311, 914 P.2d 114, review denied, 130 Wash.2d 1003, 925 P.2d 988 (1996). See State v. Parker, 28 Wash.App. 425, 426-27, 626 P.2d 508 (1981) (citing United States v. McKenzie, 446 F.2d 949 (6th Cir.1971)) (holding that search not invalidated by defendant receiving unsigned and undated copy of warrant); State v. Bowman, 8 Wash.App. 148, 150, 504 P.2d 1148 (1972) (holding suppression not required for technical violation under former statute governing execution of a search warrant for "dangerous drugs" where warrant was read aloud and served on householder, but not served on defendant as required by statute). See also City of Tacoma v. Mundell, 6 Wash.App. 673, 677-78, 495 P.2d 682 (1972) (holding that under former RCW 69.33.430, although preferable if defendant is served personally with a copy of the search warrant, it was not reversible error when defendant received the warrant the next day). Compare State v. Ettenhofer, 119 Wash.App. 300, 307, 79 P.3d 478 (2003) (holding that search was unconstitutional, and declining to apply prejudice standard, where judge reportedly approved search telephonically but no written warrant was ever issued).
United States v. Gantt, 194 F.3d 987 (9th Cir.1999), the Fourth Amendment, and Article I, section 7 do not compel suppression of evidence where a copy of the warrant and the items seized are not given to the defendant resident before commencing an otherwise lawful search. Even assuming Alloway and the officers "deliberately" violated CrR 2.3(d), Aase does not argue that he was prejudiced by the several-minute delay or that the search would have somehow been less intrusive had he been able to immediately see the warrant. Suppression is not required.[6]
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: MORGAN and HUNT, JJ.
NOTES
[1] At the earlier January 28 suppression hearing, the court allowed Aase to speak, and he argued that Gantt was on point, but apparently he did not have a citation for the case. The judge was unable to locate a citation for the case at that time.
[2] Aase's standard sentencing range was 0-60 days.
[3] The Fourth Amendment states "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Washington Constitution Article I, section 7, provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.
[4] That rule read: "[t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken." Former FED.R.CRIM.P. 41(d) (2000). The current version of the rule reads:

The officer executing the warrant must:
(A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or
(B) leave a copy of the warrant and receipt at the place where the officer took the property.
FED.R.CRIM.P. 41(f)(3).
[5] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[6] See State v. Copeland, 130 Wash.2d 244, 283, 922 P.2d 1304 (1996) (where defendant's blood and hair samples taken pursuant to warrant, holding that even if defendant had consulted with his attorney before samples taken, the attorney could have done nothing but advise the defendant to submit to the valid warrant; and had the warrant been invalid, the remedy would have been suppression).