IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33008-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AARON L. LINDER, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — In a series of decisions addressing the requirements of CrR 2.3 (Search and Seizure), this court has looked to analogous federal law and held that absent a showing of prejudice to the defendant, procedural noncompliance will not compel invalidation of an otherwise sufficient search warrant or suppression of its fruits. *See, e.g., State v. Smith*, 15 Wn. App. 716, 552 P.2d 1059 (1976); *State v. Aase*, 121 Wn. App. 558, 89 P.3d 721 (2004).

The court below was aware of this case law but nonetheless held that a police officer's unwitnessed late night execution of a search warrant for a closed container violated the rule, called the reliability of his inventory into question, and could not be remedied other than by suppression.

Guided by decisions of our Supreme Court, we conclude that the trial court's findings supported its conclusion that the contents of the closed container should be suppressed. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Aaron Linder was arrested by Kalama Police Chief Grant Gibson in March 2013 for driving with a suspended license. During the search incident to arrest, Chief Gibson found a small tin box inside the pocket of Mr. Linder's hoodie. After being informed of his *Miranda*[1] rights, Mr. Linder admitted being a daily user of hard drugs and that the tin box contained drug paraphernalia. But he refused to give his consent for Chief Gibson to open the box initially, and refused a second time at the police station.

Later on the day of the arrest, after Sergeant Steven Parker arrived at the police station to begin his 5:00 p.m. to 5:00 a.m. shift, Chief Gibson asked him to conduct a canine exam of the tin box. The sergeant took the box outside, placed it on the ground along the wall of an adjacent building and deployed his drug dog along the base of the building. The dog alerted to the box. Based on the dog's alert and Mr. Linder's statements, Sergeant Parker applied for a search warrant.

The search warrant was approved by the prosecutor's office the next day, but it was not until very late that evening that Sergeant Parker was able to reach a judge

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

available to sign it. He drove to the judge's home and obtained his signature shortly before midnight. Upon his return to the police station, Sergeant Parker, without anyone else present, executed the warrant by opening the metal box and photographing and inventorying its contents. It was typical for the department's night shift officer to work alone. The Kalama police department has a total of only five sworn officers.

Sergeant Parker inventoried the tin box as containing two pieces of aluminum foil, an empty plastic box, two plastic tubes, a hair pin, a safety pin, and a piece of plastic from a cigarette package. The cigarette wrapper contained a crystalline substance that appeared to be methamphetamine. After he finished the inventory and completed the return of service form, Sergeant Parker placed the items, a copy of his report, and a note for Chief Gibson in a temporary evidence locker.

The next morning, Chief Gibson, also acting alone, verified that the contents in the box matched Sergeant Parker's inventory and field tested a small quantity of the cellophane wrapper and its contents, which tested positive for methamphetamine. He packaged the remainder of the crystalline substance for submission to the crime laboratory. Mr. Linder was thereafter charged with one count of violation of the Uniform Controlled Substances Act, chapter 69.50 RCW, for possession of methamphetamine.

Before trial, Mr. Linder moved to suppress the evidence found in the tin box on the grounds that it was searched in violation of CrR 2.3(d). The rule provides that a return of the search warrant shall be made promptly, shall be accompanied by a written

inventory of any property taken, and—relevant here—that "[t]he inventory shall be made in the presence of the person from whose possession or premises the property is taken, or in the presence of at least one person other than the officer."[2] In the suppression hearing that followed, both Sergeant Parker and Chief Gibson testified that they were unaware of the rule's requirement that the inventory be made in the presence of another person.

The State argued that suppression was not warranted because Sergeant Parker's violation of CrR 2.3(d) was ministerial and would not invalidate the warrant absent a showing of prejudice.

The trial court granted Mr. Linder's motion to suppress. While finding that "Sergeant Parker's decision to search and inventory the defendant's box alone was done in good faith and resulted from him not being aware of the requirements of CrR 2.3(d)," it concluded that CrR 2.3(d)'s requirement of a witness to the inventory "is not purely

---

[2] CrR 2.3(d) provides in its entirety:

The peace officer taking property under the warrant shall give to the person from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken. If no such person is present, the officer may post a copy of the search warrant and receipt. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the person from whose possession or premises the property is taken, or in the presence of at least one person other than the officer. The court shall upon request provide a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

4

advisory" and "must have some meaning." Clerk's Papers (CP) at 22-23. It also

concluded:

> Absent suppression, there is no adequate remedy for a violation of CrR
> 2.3(d). A defendant's only recourse would be to testify that, for example,
> there were no drugs in the container. Such testimony would be pitted
> against the word of a police officer. From common experience, this places
> defendant at a disadvantage.

CP at 23. Having suppressed the evidence, the court determined that further prosecution

was impossible and dismissed the case without prejudice. The State appeals.

## ANALYSIS

We review a court's findings of fact in ruling on a motion to suppress under the

substantial evidence standard and review conclusions of law de novo. *State v. Levy*, 156

Wn.2d 709, 132 P.3d 1076 (2006). In this case, the State does not challenge the findings

of fact, which are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489

(2003). It challenges only whether the exclusionary rule is properly applied to the

violation of a ministerial court rule that violates no constitutional precept and that it

argues resulted in no prejudice.

In *State v. Bonds*, 98 Wn.2d 1, 9, 653 P.2d 1024 (1982), our Supreme Court,

surveying prior cases, observed that "we have not limited the exclusionary rule to

protection of the constitutional immunity from unreasonable search (or seizure)." In

addition to citing cases in which it had applied the exclusionary rule to misdemeanor

arrests that violated common law, or applied the rule without finding it necessary to determine whether a misdemeanor arrest was constitutionally unreasonable, it explained:

> The exclusionary rule has also been applied when a statute is violated in the course of obtaining evidence. In some cases, the statute itself provides that evidence obtained in violation of its provisions shall be inadmissible, *e.g.*, RCW 9.73.050. *State v. Williams*, 94 Wn.2d 531, 617 P.2d 1012 (1980). However, even where the statute does not specifically provide for inadmissibility, the exclusionary rule has been applied *where no other remedy is available for enforcement of the statutory requirements. State v. Krieg*, 7 Wn. App. 20, 497 P.2d 621 (1972). In sum, therefore, we have extended the exclusionary rule beyond the original Fourth Amendment context.

*Id.* at 10 (emphasis added); *cf. State v. Hehman*, 90 Wn.2d 45, 47, 578 P.2d 527 (1978) (excluding evidence discovered in search incident to minor traffic violation arrest "as a matter of public policy" despite the constitutionality of the arrest). In considering whether the exclusionary rule should be applied where the illegality in obtaining evidence was the violation of the laws of another state, the court held that "the exclusionary rule should be applied to achieve three objectives:"

> First, and most important, to protect privacy interests of individuals against unreasonable governmental intrusions; second, to deter the police from acting unlawfully in obtaining evidence; and third, to preserve the dignity of the judiciary by refusing to consider evidence which has been obtained through illegal means.

98 Wn.2d at 12. Weighing those objectives against the substantial costs of exclusion in that case—the loss of a confession implicating the defendant in "three terrible crimes," where the credibility of the confession was not impaired by the illegality—the court in

6

*Bonds* had "little hesitation in concluding that [those] costs clearly outweigh the limited benefits which would be obtained from excluding the confession because of the illegal arrest." *Id.* at 14.

Our Supreme Court has also applied the remedy of exclusion of evidence for some violations of the criminal rules. CrR 3.1 provides that when a person in police custody requests access to a lawyer, officers must make reasonable efforts to put him or her in contact with one. Where evidence is tainted by a violation of that court rule, the Court has held that suppression is the proper remedy. *City of Spokane v. Kruger*, 116 Wn.2d 135, 146, 803 P.2d 305 (1991).

In this case, the trial court concluded, among other matters, that "[a]bsent suppression, there is no adequate remedy for a violation of CrR 2.3(d)." CP at 23. This conclusion parallels the reasoning in *Krieg*, cited in *Bonds*, that suppression was warranted where a highway patrolman failed to inform the defendant that he had the right to refuse to submit to a chemical test of his breath or blood for blood alcohol content and the right to have additional tests administered by any qualified person of his choosing. 7 Wn. App. at 26 (stating that "no remedy is presently available for enforcement of the statutory requirements, except to exclude the evidence unlawfully obtained.") And unlike in *Bonds*, the credibility of the State's evidence in this case *was* impaired by the illegality. This is reflected in the trial court's handwritten changes to proposed findings. The trial court changed a proposed finding as to what "Sergeant Parker found" in the tin

7

box to address, instead, what "Sergeant Parker testified he found." CP at 22. It struck three proposed findings that the items in the box had been "accurately" captured by the sergeant's photographs and "accurately" inventoried. CP at 21-23 (striking portions, or all, of proposed findings 19, 20 and 28).

The State nonetheless argues that we should apply a longstanding series of decisions by this court in which, in the context of violations of CrR 2.3, we have applied the reasoning of federal courts that the search and seizure rules impose ministerial requirements, a violation of which should not be a basis for suppressing evidence unless prejudicial. The State cites *State v. Bowman*, 8 Wn. App. 148, 504 P.2d 1148 (1972); *Smith*, 15 Wn. App. at 719; *State v. Wraspir*, 20 Wn. App. 626, 581 P.2d 182 (1978); *State v. Parker*, 28 Wn. App. 425, 426, 626 P.2d 508 (1981); *State v. Kern*, 81 Wn. App. 308, 914 P.2d 114 (1996); *Aase*, 121 Wn. App. at 564; and *State v. Temple*, 170 Wn. App. 156, 285 P.3d 149 (2012).

In *Bowman*, officers executing a search warrant for drugs at a home served a copy of the warrant on the homeowner and read the warrant to others who were present, including defendant Bowman. Bowman's effort to discreetly drop a baggie on the floor proved unsuccessful; one of the officers saw what he did and retrieved the baggie. Its contents proved to be LSD[3] and Bowman was charged with possession of a dangerous

---

[3] Lysergic acid diethylamide.

8

drug. He moved to suppress the drug on the basis that he was not personally served with the warrant as required by former RCW 69.40.100 (1963), which required, in relevant part, that a copy of the warrant be served upon "the person or persons found in possession of any such dangerous drugs . . . so seized." The court affirmed the trial court's refusal to suppress the drugs, describing the violation as "technical in nature" and noting that the officers' substantial compliance with the statute "did not result in any disadvantage to the defendant." 8 Wn. App. at 150.

In *Smith*, the defendants challenged a search warrant on the ground that it "failed to 'designate a magistrate to whom it shall be returned,'" as was required by former JCrR 2.10(c). 15 Wn. App. at 719 (quoting the rule). Although acknowledging that this was an omission, the court held that "defects relating to the return of a search warrant are ministerial and do not compel invalidation of the warrant or suppression of its fruits, absent a showing of prejudice by the defendant." *Id.* As authority, *Smith* cited *United States v. Wilson*, 451 F.2d 209 (5th Cir. 1971) and *State v. Ronniger*, 7 Or. App. 447, 492 P.2d 298 (1971), which had itself relied in part on federal authority. *See Ronniger*, 492 P.2d at 456 (citing *United States v. Averell*, 296 F. Supp. 1004, 1014 (E.D.N.Y. 1969)).

In *Wraspir*, the defendants, owners of a trailer, moved to suppress evidence seized in a search of the trailer under the same provision of CrR 2.3(d) that is at issue here. Six police officers arrived to execute the warrant and encountered two persons in the trailer; neither of the occupants was an owner of the trailer. Two of the officers transported the

9

occupants of the trailer to the county jail while the other four officers remained behind and were present for preparation of the inventory. While CrR 2.3(d) merely requires that the inventory be prepared in the presence of the person whose person or premises is being searched or "in the presence of at least one person other than the officer," the owners of the trailer argued that all four officers assisted in some fashion in preparing the inventory and therefore none qualified as a "person *other than* the officer." 20 Wn. App. at 628. The court rejected that construction of the rule, relying in part on the similar federal rule, former Fed. R. Crim. P. 41(d),[4] under which the inventory may be conducted in the presence "of at least one credible person" other than the applicant for the warrant—a reference that the court stated "clearly could be another officer." 20 Wn. App. at 629. The court concluded that "[t]he purpose of the rule seems to be to safeguard, if possible, against errors, willful or inadvertent, by one officer acting alone." *Id.*

In *Parker*, the court held that a trial court properly denied a motion to suppress marijuana plants found in a search of the defendants' residence on the basis that the unsigned copy of the warrant handed to them at the time of the search had not been conformed to show the date and signature earlier affixed on the original warrant by the issuing magistrate. It cited *Wraspir*, *Smith* and *Bowman*.

---

[4] The federal inventory requirement is now at Fed. R. Crim. P. 41(f)(1)(b).

In *Kern*, a deputy sheriff served a bank with a search warrant describing specific records of a customer's account that bank employees then searched for and produced to the county on their own. 81 Wn. App. at 310. The defendant moved to suppress the records for multiple alleged violations of CrRLJ 2.3(c). For the most part, the appellate court rejected the defendant's construction of the rule. It found one violation of the rule where the deputy prematurely filed an inventory and return reflecting items he *expected* to be delivered by the bank, before any records had been received into police custody. The court cited *Parker* in holding that because the "departure from the rules was ministerial and harmless" and Kern "alleges no prejudice," suppression was not appropriate. *Id.* at 318.

In *Aase*, the defendant sought suppression of evidence because he was provided with a copy of the search warrant several minutes into the search rather than at its outset. Denial of the suppression motion was affirmed because Aase did not argue that he was prejudiced by the several-minute delay; among cases cited by the court were *Kern*, *Parker* and *Bowman.* 121 Wn. App. at 567-68.

Finally, in *Temple*, the defendant alleged multiple defects in the search warrant, its execution and return, including that the search warrant inventory was not made in the presence of another person. Temple conceded that each error was insufficient standing alone to invalidate the warrant absent a showing of prejudice, so the arguments Mr. Linder makes in this case were never addressed by the court. Instead, Temple argued that

11

No. 33008-7-III
*State v. Linder*

the cumulative effect of the errors raised *constitutional* concerns requiring suppression. 170 Wn. App. at 161-62. Responding to that argument, the court observed that "[t]he courts' ministerial rules for warrant execution and return do not 'flow so directly from the Fourth Amendment's proscription upon unreasonable searches that failure to abide by them compels exclusion of evidence obtained in execution of a search warrant.'" *Id.* at 162 (quoting 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 4.12, at 717 (3d ed. 1996)).

The first thing we observe about this court's and the federal decisions is that while they frequently mention the ministerial character of the search and seizure rules, the touchstone of the courts' decisions is prejudice. "Ministerial" means

> Of, relating to, or involving an act that involves obedience to instructions or laws instead of discretion, judgment, or skill; of, relating to, or involving a duty that is so plain in point of law and so clear in matter of fact that no element of discretion is left to the precise mode of its performance.

BLACK'S LAW DICTIONARY 1146 (10th ed. 2009); *Brown v. Owen*, 165 Wn.2d 706, 725 n.10, 206 P.3d 310 (2009) (a duty is "ministerial" where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment). "Ministerial" does not mean "unprotective of a right." By way of example, the duty to give *Miranda* warnings is ministerial, as is the duty to administer to testifying witnesses an oath to tell the truth.

In an oft cited decision by Judge Ruggerro Aldisert addressing whether suppression is an appropriate remedy for violation of the federal search and seizure rule,

12

he merely *observes* that the procedural requirements are essentially ministerial; he does

not treat their ministerial character as any basis for deciding whether the remedy of

suppression is available for their violation:

> The procedural requirements of Rule 41(d) are essentially ministerial in
> nature. The rule commands the officer to perform specific acts—to leave a
> copy of the warrant, to issue a receipt for property taken, to make a return
> and to prepare a written inventory in the presence of certain persons. While
> the rule outlines detailed procedures, it does not expressly address the
> remedies, if any, which flow from a failure to adhere to those procedures.
> Therefore, we turn to Rule 2, F.R.Cr.P. as our interpretive polestar.

*United States v. Hall*, 505 F.2d 961, 963 (3rd Cir. 1974).

Turning to Fed. R. Crim. P. 2, Judge Aldisert concludes that "[t]he manifest intent

of the rules is to ensure a just determination of every criminal proceeding," and from that,

he reasons that it was not intended that every violation of the rules' procedures "however

insignificant and however lacking in consequences" should give rise to the remedy of

suppression. *Id.* at 963-64. But "[a]t the same time," he wrote, "we do not believe that

Congress would enact Rule 41(d), expressly requiring certain actions on the part of the

government, and not also intend some remedy to flow from certain violations of that

rule." *Id.* at 964. Thus, because some violations of ministerial procedures set forth in the

search and seizure rule can be consequential and some will not, *Hall* holds that a "motion

to suppress . . . should be granted by the district court only when the defendant

demonstrates prejudice from the Rule 41(d) violation." *Id.* The ministerial character of

13

the federal rules' procedures is a fact, but is not relevant to whether exclusion of evidence is an appropriate remedy.

Neither party to this case cites any reported federal or state decision addressing whether a violation of a requirement that the inventory of a search be conducted with at least one witness is prejudicial and requires exclusion of the evidence; we assume the parties, like we, searched for but were unable to find any such case. *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (courts may assume that where no authority is cited, counsel has found none after search).

In the seven Washington decisions relied upon by the State, almost all of the searches were conducted in a manner that satisfied the purpose, if not the letter, of the procedure required by the rule. In many cases, the violations could be cured after the fact. As a result, no prejudice to a right of the defendant was demonstrated.

Here, by contrast, an officer's unwitnessed inventory would appear to be non-prejudicial only if the trial court found the inventory to be accurate despite the violation, and substantial evidence supported that finding (thus satisfying the purpose of the rule); or if the violation could be remedied after the fact. Neither is the case here.

The trial court's handwritten revision of the proposed findings make it especially clear that it was unwilling to find that Sergeant Parker's photographs accurately depicted the items in the tin box or that his inventory was accurate. While the trial court found Sergeant Parker to be operating in good faith ignorance of the requirement of the rule in

14

performing the inventory by himself, his conduct did not satisfy the purpose of CrR 2.3(d)'s witness requirement which, as observed in *Wraspir*, "seems to be to safeguard, if possible, against errors, willful or inadvertent, by one officer acting alone." 20 Wn. App. at 629.

The sergeant's violation could not be cured after the fact, for, as the trial court concluded, a defendant's only recourse would be to deny the accuracy of the inventory in opposition to the word of a police officer, and "[f]rom common experience, this places defendant at a disadvantage." CP at 23.

*Krieg* supports the exclusion of the evidence where no other remedy is available to enforce a rule's requirements. Exclusion of the fruits of Sergeant Parker's search also satisfies two of the three objectives identified in *Bonds*. As to the first—protecting individuals' privacy interests against unreasonable government intrusions—it is true that the tin box had already been lawfully seized from Mr. Linder. But we hold that individuals still have an interest, even if it falls short of a constitutional right, in being protected from the admission into evidence of an inventory conducted in violation of the rule and that is irretrievably tainted by having been prepared by a single officer, with literally no one else around. Exclusion of the evidence serves the third objective identified in *Bonds* of preserving the dignity of the judiciary by refusing to consider evidence obtained through illegal means. Only the second objective—deterring the police from acting unlawfully—is arguably *not* served, given the trial court's finding that

15

No. 33008-7-III
*State v. Linder*

Sergeant Parker acted in good faith ignorance of the requirement of the rule. In other contexts, our Supreme Court has held that deterring unlawful police action is not the paramount concern of our state exclusionary rule. *State v. Afana*, 169 Wn.2d 169, 180, 233 P.3d 879 (2010) (refusing to recognize a "good faith" exception to the state exclusionary rule). The trial court's unchallenged findings supported its conclusion that exclusion of the evidence was the appropriate remedy.

Affirmed.

_____
Siddoway, C.J.

WE CONCUR:


_____
Brown, J.


_____
Fearing, J.

16