IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35645-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEROME LIONEL PLEASANT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Jerome Pleasant appeals his convictions for

possession of a controlled substance, cocaine, with intent to deliver, and possession of a

controlled substance, hydrocodone. He argues the trial court erred when it denied his

motions to suppress. We disagree and affirm, but remand to strike certain legal financial

obligations.

FACTS

Detective Jeremy Jones was parked in downtown Pasco in an unmarked patrol car

one evening. Across the street from him was a Conoco gas station. Jones saw a car

parked by the gas pump at the station, and a man in the driver's seat. He also saw a man

enter the passenger side of the car. The man stayed in the car for 30 seconds and then left

the gas station on foot. The car then left the pump area and, before entering the road, failed to stop before crossing the sidewalk. It is an infraction for a driver in a business or residential district to emerge from an alley, driveway, or building without stopping before crossing a sidewalk. *See* RCW 46.61.365.

Jones stopped the car, and asked the driver for identification, proof of insurance, and registration. The driver produced a card that identified him as Jerome Pleasant. He did not have proof of insurance or registration. Jones suggested looking in the glove box, but Pleasant said he was sure the documents were not in the car. Jones ran a license check and learned that Pleasant's driver's license was suspended in the third degree. He then arrested Pleasant and placed him in the patrol car.

While in the patrol car, Pleasant asked about his possible bail amount. Jones estimated it would be about $500. Pleasant asked to retrieve the money from the car, but Jones declined and offered to retrieve it for him. Pleasant said "'nevermind then.'" Clerk's Papers (CP) at 196. Because Pleasant was uncomfortable opening his glove box and also uncomfortable allowing Jones to retrieve bail money from the car, Jones asked for police canine assistance. The canine alerted to the presence of narcotics. The car was towed to the impound lot and sealed, and Jones prepared an application for a search warrant.

The following day, Jones obtained and executed the search warrant. He completed and signed the inventory form. The form showed that he, Detective Nathan Carlisle, and Sergeant Jason Miller were all present during the search and filling out of the form.[1] The search yielded a large amount of cocaine, prescription pills including hydrocodone, $5,200, and various drug paraphernalia.

The State charged Pleasant with one count of possession of a controlled substance, cocaine, with intent to deliver, and one count of possession of a controlled substance, hydrocodone. Before trial, Pleasant made two motions to suppress the evidence obtained from his car.

*First motion: Pretextual stop*

Pleasant first argued that the traffic stop was pretextual. At the first suppression hearing, Jones described what he saw:

> I saw a white vehicle leaving Kim's Conoco gas station around 18th and Court. I saw the vehicle leave the—the building driveway area and enter out on westbound onto Court Street, but the vehicle did not stop for the sidewalk before entering out into the traffic on Court Street.

---

[1] This form was filed with the clerk's office a few days after the search and entered into the Judicial Information System. It is not searchable by people outside the clerk's office because it is filed before a case begins and is not associated with the criminal case number.

Report of Proceedings (Mar. 21, 2017) (RP) at 6. Jones described the area around the

Conoco station as having many businesses. He also testified he had stopped 39 or more

drivers for this infraction in the past year and, of those stopped, he had cited 13 for the

infraction violation.

On cross-examination, Jones admitted he found the interaction between Pleasant

and the pedestrian who had entered Pleasant's car suspicious. He also admitted that when

he was about to stop Pleasant's car, he radioed a second officer to contact the pedestrian.

Jones later testified,

> The cause of the stop was the infraction on the sidewalk. The other stuff
> I—I saw was just stuff that I saw. It's—it's not the—the sole reason or the
> major reason for the stop. The *major reason* for the stop was the—was the
> sidewalk.

RP at 23 (emphasis added).

In denying the suppression motion, the trial court found Jones's testimony credible

and that "the *sole* reason for the stop was, in fact, the traffic violation." RP at 44

(emphasis added).

*Second motion: CrR 2.3(d)*

Pleasant later argued that the incriminating evidence was collected in violation of

CrR 2.3(d), in that only a single officer completed and signed the inventory form.

Detective Carlisle testified at the second suppression hearing. He testified that he, Miller,

4

and Jones all participated in the search, and all found items of evidentiary value. He also

testified that he and Miller were present when Jones completed and signed the inventory

form. The trial court determined that CrR 2.3(d) was not violated because multiple

officers were present when executing the search warrant and when Jones completed the

inventory form.

The case proceeded to trial, and a jury found Pleasant guilty on both counts. He

timely appealed to this court.

ANALYSIS[2]

Pleasant argues the trial court erred in denying his motions to suppress. We

address each motion in the order presented to the trial court and argued on appeal.

A.    PRETEXTUAL STOP

Stopping a car is a seizure. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833

(1999). A warrantless seizure is per se unreasonable under Washington Constitution

article I, section 7 unless the State can prove that one of the narrow exceptions to the

warrant requirement applies. *Id.* at 349.

---

[2] In his opening brief, Pleasant argued that trial counsel was ineffective for not moving to suppress on the basis that the traffic stop was pretextual. The State responded that trial counsel did move to suppress on that basis. The State thereafter agreed that Pleasant could file a supplemental brief and argue that the trial court erred in denying the motion. We infer that Pleasant has withdrawn his ineffective assistance of counsel claim.

"Just as an arrest may not be used as a pretext to search for evidence, a traffic infraction may not be used as a pretext to stop to investigate for a sufficient reason to search even further." *Id.* at 353. In determining whether the stop was pretextual, we consider the officer's subjective motivation in making the stop and the objective reasonableness of the officer's conduct. *Id.* at 358-59. Such an inquiry requires the court to satisfy itself that the officer, both subjectively and objectively, is motivated by the proper purpose. *Id.* at 359 (citing *State v. Angelos*, 86 Wn. App. 253, 256, 936 P.2d 52 (1997)). Relevant to intent is the officer's routine practice. *State v. Arreola*, 176 Wn.2d 284, 289, 290 P.3d 983 (2012).

Here, substantial evidence does not support the trial court's finding that the traffic infraction was the sole reason why Jones stopped Pleasant. On cross-examination, Jones tacitly admitted that the suspicious activity he witnessed before the infraction played a role in his decision to stop Pleasant. He tacitly admitted as much when he denied that the suspicious activity was the sole or major reason for the stop, and testified that "[t]he *major reason* for the stop . . . was the sidewalk [infraction]." RP at 23 (emphasis added).

In *Arreloa*, the court determined the constitutionality of a mixed-motive stop. The court held, "[a] mixed motive stop does not violate article I, section 7 so long as the police officer making the stop exercises discretion appropriately." *Arreola*, 176 Wn.2d at

6

298. In other words, to pass constitutional muster, the police officer must make "an independent and conscious determination that a traffic stop to address a suspected traffic infraction is reasonably necessary in furtherance of traffic safety and the general welfare." *Id.* at 298-99. Nor does it matter that the traffic infraction is the secondary reason for the stop. *Id.* at 299. Even officers whose suspicions have been aroused may enforce the traffic code. *State v. Nichols*, 161 Wn.2d 1, 11, 162 P.3d 1122 (2007).

The record supports the stop here. Jones had stopped over 39 cars for the sidewalk infraction during the past 12 months and had issued 13 citations. There is no evidence that some or most of these stops were made only after witnessing suspicious activity unrelated to driving. Jones's practice of enforcing the sidewalk infraction evidences an independent and conscious determination that he believed the stop was reasonably necessary to ensure traffic safety and the general welfare. For these reasons, we conclude the trial court did not err by denying Pleasant's first motion to suppress.

B.      CrR 2.3(d)

Pleasant contends the trial court erred when it denied his second motion to suppress evidence. He argues the evidence was collected in violation of CrR 2.3(d). We disagree.

Pleasant relies on *State v. Linder*, 190 Wn. App. 638, 360 P.3d 906 (2015) and the fact that more than one officer did not sign the inventory form, to warrant reversal and suppression of the evidence.

CrR 2.3(d) provides in relevant part:

The inventory shall be made in the presence of the person from whose possession or premises the property is taken, or in the presence of at least one person other than the officer.

In *Linder*, the defendant was arrested for driving with a suspended license. *Linder*, 190 Wn. App. at 641. During the search incident to arrest, the officer found a small tin box inside the defendant's pocket. *Id.* The defendant admitted the box contained drug paraphernalia. *Id.* The officer applied for and obtained a search warrant and inventoried the box, which contained drug paraphernalia. *Id*. at 641-42. Before trial, the defendant moved to suppress the evidence, arguing the officer violated CrR 2.3(d) by searching and inventorying the box without another witness. *Id.* at 642. The trial court granted the motion. *Id.* at 643. On appeal, the court recognized that the officer violated CrR 2.3(d) and, after a lengthy analysis about whether the violation prejudiced the defendant, the court affirmed. *Id.* at 644-52.

Pleasant's argument is unpersuasive. CrR 2.3(d) does not contain any requirement that multiple officers *sign* the inventory form. It merely requires that a person other than

the officer conducting the inventory witness the execution and inventory of the search warrant. Here, the trial court found that Jones executed the search warrant and inventoried the car with Sergeant Miller and Detective Carlisle. Jones's, Carlisle's, and Miller's badge numbers appeared on the search inventory form as having found items of evidentiary value. Jones testified that both Miller and Carlisle were present when he completed the inventory form. The execution of the warrant and subsequent inventory complied with the requirements of CrR 2.3(d).

Pleasant does not provide any authority for his argument that multiple officers must *sign* the inventory form under CrR 2.3(d) besides *Linder*. But *Linder* is distinguishable. In *Linder*, two officers did not witness the execution and inventory of the warrant; whereas here, the testimony was clear that three officers were present during the search and completion of the inventory form. The trial court did not err by denying Pleasant's second motion to suppress.

C.     DENIAL OF MOTION TO SUPPLEMENT

Pleasant filed a second motion to supplement his brief, contending that the $200 criminal filing fee and the $100 DNA[3] fee must be struck from his judgment and sentence

---

[3] Deoxyribonucleic acid.

No. 35645-1-III
*State v. Pleasant*

based on *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). We grant his motion and address his contentions.

House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary LFOs on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3); *Ramirez*, 191 Wn.2d at 745-47. Among the changes was an amendment to former RCW 36.18.020(2)(h) (2015) to prohibit the imposition of the $200 criminal filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17(2)(h). As held in *Ramirez*, the changes to the criminal filing fee statute apply prospectively to cases pending on direct appeal prior to June 7, 2018. *Ramirez*, 191 Wn.2d at 738, 747. Accordingly, the change in law applies to Pleasant's case. Because Pleasant was indigent in the trial court and is still indigent on appeal, the $200 criminal filing fee must be struck pursuant to *Ramirez*.

The change in law also prohibits imposition of the DNA collection fee when the State has previously collected the offender's DNA as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18. The record establishes that Pleasant has seven prior Washington State felonies since 2002. Since that time, Washington law has required defendants with a felony conviction to provide a DNA sample. *State v. Catling*, 193 Wn.2d 252, 259, 438 P.3d 1174 (2019); *see also* RCW 43.43.754; LAWS OF 2002, ch. 289, § 2. Pleasant's

10

No. 35645-1-III
*State v. Pleasant*

seven prior felonies make it virtually certain that the State has previously collected a DNA sample from him. We, therefore, direct the trial court to strike the DNA collection fee.

Affirmed but remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

11